1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS MCCLUNG, JR.,

11           Plaintiff,                        No. 2:11-cv-2874 CKD

12      vs.

13   MICHAEL J. ASTRUE,                        ORDER
     Commissioner of Social Security,
14
             Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying his application for Disability Income Benefits ("DIB") under

18   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will grant

19   plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary

20   judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

21   BACKGROUND

22          Plaintiff, who was born in 1965, applied for DIB on January 24, 2008, alleging

23   disability beginning April 17, 2003.  Administrative Transcript ("AT") 37, 154; Dkt. 13-1.

24   Plaintiff alleges that he is unable to work on account of his mental impairment, peripheral

25   neuropathy, heart condition, diabetes and high blood pressure.  AT 56-57.  In a decision dated

26   March 22, 2010, an Administrative Law Judge ("ALJ") determined that plaintiff was not

1

disabled.[1]  Tr. 17-25.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

    1.    The claimant has not engaged in substantial gainful activity since January 24, 2008, the application date.

    2.    The claimant has the following severe combination of impairments: status post-pacemaker implantation, diabetes with peripheral neuropathy, hypertension, psychotic disorder, and depressive disorder.

    3.    The claimant does not have a combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR Part 416.967(b) except that he should avoid concentrated interaction, more than 60 percent of the workday, with the public, coworkers or supervisors.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.    The claimant has no past relevant work.

6.    The claimant was born on June 25, 1965 and was 42 years old, which is defined as a younger individual 18-49, on the date the application was filed.

7.    The claimant has a limited education and is able to communicate in English.

8.    Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since January 24, 2008, the date the application was filed.

AT 37- 44.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) failing to credit the portions of examining Drs. Kalman's Sharma's and Daigle's opinions that indicated plaintiff was more limited than determined by the ALJ; and (2) failing to call a vocational expert despite the nonexertional limitations found by the ALJ.  Dkt. 13-1.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3

1 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

2 rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

3 The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

4 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

5 conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

6 affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id; see

7 also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

8 administrative findings, or if there is conflicting evidence supporting a finding of either disability

9 or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

10 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

11 weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

12 DISCUSSION

13     A.     MEDICAL OPINIONS

14          Plaintiff takes issue with how the ALJ treated the opinions of three examining

15 doctors — Dr. Sharma, Dr. Kalman and Dr. Daigle.  The weight given to medical opinions

16 depends in part on whether they are proffered by a treating, examining or non-examining doctor.

17 See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  Those physicians with the most

18 significant clinical relationship with the claimant are generally entitled to more weight than those

19 physicians with lesser relationships.  Carmickle v.Commissioner, Social Sec. Admin., 533 F.3d

20 1155, 1164 (9th Cir. 2008).  As such, superior weight should be given to the opinion of a treating

21 source, who has a greater opportunity to know and observe the patient as an individual.  See

22 Lester, 81 F.3d at 831, Smolen v. Charter, 80 F.3d 1273, 1285 (9th Cir. 1996).  The opinion of an

23 examining physician is, in turn, entitled to greater weight than the opinion of a non-examining

24 physician.  See Lester, 81 F.3d at 830, 20 C.F.R. §416.927(d)(1).

25          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

26 considering its source, the court considers the presence of contradictory opinions in the record and

whether clinical findings support the opinions.  See Lester, 81 F.3d at 829-31.  An ALJ may reject

the uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons.  Id at 831.  In contrast, a contradicted opinion of a treating or examining

professional may be rejected for "specific and legitimate" reasons, that are supported by

substantial evidence.  Id at 830.  While a treating professional's opinion generally is accorded

superior weight, if it is contradicted by a supported examining professional's opinion (e.g.,

supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews

v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751

(9th Cir. 1989)).  The ALJ need not give weight to conclusory opinions supported by minimal

clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's

conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

>            1.      Dr. Sharma's Opinions

            Dr. Sharma, a board certified doctor of internal medicine, examined claimant on

May 3, 2008.  AT  277.  His opinion — to which the ALJ accorded "great weight" (AT 40) —

contains the finding that plaintiff was limited "in feeling objects with both the hands to

occasionally because of decreased sensations in the fingers . . ."  AT 281.  Plaintiff complains that

the ALJ improperly rejected this finding by not incorporating it into plaintiff's Residual

Functional Capacity ("RFC") assessment.  Dkt. 13-1 at 15.  Although the ALJ recited Dr.

Sharma's assessment of plaintiff that limited him to "occasional feeling with both hands due to

decreased sensation in the claimant's fingers," he made no further mention of that finding and

ultimately did not incorporate any upper extremity limitation into plaintiff's RFC.  AT 40.

Nonetheless, upon listing all of Dr. Sharma's findings, the ALJ stated that "[g]reat weight is given

to Dr. Sharma's opinion because it is consistent with his examination and the record as a whole."

AT 40.

            It is true that an ALJ may properly rely upon only certain portions of a medical

opinion while rejecting other parts.  See e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir.

1    1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial

2    evidence).  However, in order to reject any portion of this examining physician's opinion, the ALJ

3    needed to provide adequate reasons supported by substantial evidence for doing so.  Id.  As the

4    uncontradicted opinion of an examining doctor, the ALJ was required to provide "clear and

5    convincing" reasons for failing to credit Dr. Sharma's finding with respect to plaintiff's hands.

6    See Lester, 81 F.3d at 831.  This could be done by setting out a detailed summary of the facts and

7    conflicting clinical evidence, stating the ALJ's interpretation thereof, and making findings.  See

8    Reddick, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ here did not do so.

9          The Commissioner does not dispute that the ALJ failed to address this limitation

10   but maintains that any error in doing so is harmless as any such limitation would be

11   inconsequential to the ultimate conclusion that plaintiff's nonexertional limitations have little or

12   no effect on the occupational base of unskilled light work.  Dkt. 16 at 9-11.  Specifically,

13   defendant points to Social Security Ruling ("SSR") 85-15 and the proposition that a vocational

14   expert "would not ordinarily be required where a person has a loss of ability to feel the size,

15   shape, temperature, or texture of an object by the fingertips, since this is a function required in

16   very few jobs."  Dkt. 16 at 10.  The Commissioner also cites SSR 83-14 which specifies that an

17   inability to use the fingertips to sense texture or temperature typically has "very little effect on the

18   unskilled light occupational base."  Id.

19         Even considering Dr. Sharma's limitation on plaintiff's feeling in his hands, the

20   limitation would have little effect on the occupational base of unskilled light work which plaintiff

21   is otherwise qualified to perform.  One distinction that SSR 83-14 draws between unskilled

22   sedentary work and unskilled light work is fine use of the fingers.  Unlike sedentary work, light

23   work requires gross use of the hands, but not usually the fine motor skills required of sedentary

24   work.  Id.  Dr. Sharma's opinion did not include any limitations on plaintiff's gross motor skills

25   with respect to his hands.  AT 281.  Nowhere in the opinion does Dr. Sharma render any findings

26   limiting plaintiff's ability to grasp, hold or turn objects.  Id.  It is a limitation on these functional

6

1  abilities which would more likely limit the occupational base of a person otherwise functionally

2  capable of light work.  SSR 83-14.  Accordingly, although the ALJ failed to provide proper

3  reasons for rejecting Dr. Sharma's limitation on plaintiff's feeling in his hands, the error was

4  harmless as any such limitation would have little effect on the occupational base.  See Curry v.

5  Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial

6  review of social security cases).

7              2.        Dr. Kalman's Opinion

8              Dr. Kalman conducted a psychiatric examination and evaluation of plaintiff on

9  August 3, 2009.  AT 476.  As he did with Dr. Sharma's opinion, the ALJ recited all of Dr.

10 Kalman's findings with respect to plaintiff's mental impairments, including the findings of mild

11 and moderate limitations.  AT 40-41.  The ALJ stated that he gave "great weight" to this portion

12 of Dr. Kalman's opinion as it was "consistent with his [Dr. Kalman's] examination and the

13 evidence of record," but he rejected Dr. Kalman's opinion that plaintiff's mental impairments

14 rendered him "unable to complete a workday more than three to four times per month" if

15 employed in a full time job. AT 41.  Plaintiff alleges that the ALJ failed to meaningfully analyze

16 Dr. Kalman's opinion, particularly his findings that plaintiff was moderately to markedly limited

17 in six areas of work-related functioning.

18              a.        Absenteeism

19             First, the ALJ summarily rejected Dr. Kalman's opinion that plaintiff would be

20 unable to complete a workday more than three or four times a month without providing

21 sufficiently specific reasons for doing so.  Rather, the ALJ merely concluded that this finding was

22 "inconsistent with the record as a whole."  AT 41.  Without more, this explanation is inadequate.

23 The ALJ must do more than offer his conclusion that an opinion is inconsistent with the record as

24 a whole.  See Reddick, 157 F.3d at 725, Knapp v. Astrue, 2012 WL 1669427, at *8 (E.D. Cal.

25 May 11, 2012) (ALJ's failure to identify and discuss specific conflicting evidence in the record

26 was legal error), Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (simply stating that

7

medical opinions are contrary to other conclusions does not meet the level of specificity required to discount the opinion or conclusion).

This error is not harmless, because whether or not plaintiff can meet the demands of unskilled light work depends on whether he can perform on a sustained basis. See SSR 85-15, at *4. This would be seriously called into question if Dr. Kalman's opinion that plaintiff would be absent at least three to four times a month were adopted. See Lester, 81 F.3d at 834 (generally, where the ALJ fails to properly reject the opinion of an examining physician, the opinion is credited as a matter of law). Because no vocational expert provided testimony on the availability of jobs if the absenteeism issue presented by Dr. Kalman was taken into consideration, further development of the record on this issue is required. Accordingly, on remand, the ALJ must consider Dr. Kalman's opinion on plaintiff's absenteeism and set forth specific and legitimate reasons for discrediting it. Alternatively, if the ALJ accepts this limitation, he must consider how it affects the basic mental demands of the light unskilled occupational base as set forth in SSR 85-15.

b.      "Moderately Limited"

Secondly, the ALJ failed to consider the definition of "moderately limited" used by Dr. Kalman in his medical source statement of the plaintiff, despite stating that he gave "great weight" to those findings. AT 40-1; 480-82. In his report, Dr. Kalman defined "moderately limited" as "substantial[] impair[ment] in terms of speed and accuracy" of the designated work-related function such that it cannot be performed "more than 2 to 3 hours in an 8-hour workday." AT 480. Although Dr. Kalman may not have employed the conventional definitions of these terms, there is no requirement that he do so. The definitions he was using appeared clearly on the front page of Dr. Kalman's medical source statement which the ALJ needed to consider.

In his medical source statement, Dr. Kalman found plaintiff "moderately limited" in four areas of work-related functions that pertain directly to the occupational base of unskilled work for which plaintiff is otherwise qualified. AT 481-82. Specifically, Dr. Kalman found that

plaintiff was moderately limited in his ability to work in coordination with or proximity to others without being unduly distracted by them; to interact appropriately with the general public or customers; to accept instructions and to respond appropriately to criticism from supervisors; and to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.  AT 481-82.  Applying Dr. Kalman's definition of "moderate[] limit[ation]," translates to a finding that plaintiff was "substantially impaired in terms of speed and accuracy" in these areas of work-related functioning and that he could perform them "occasionally during an 8-hour workday" but not more than "2 to 3 hours" in a day.  AT 480.  If accepted as true, these findings present nonexertional limitations to plaintiff's occupational base.  See Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 579 (9th Cir.1988) (Nonexertional limitations are non-strength related limitations including mental, sensory, postural, manipulative, and environmental limitations); 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, § 200.00(e).

        The Commissioner maintains that Dr. Kalman's moderate limitations described above were accounted for by the ALJ's RFC assessment that limited plaintiff to" avoid[ing] concentrated interaction, more than 60 percent of the workday, with the public, coworkers, or supervisors."  Dkt. 16 at 12.  The ALJ determined that this limitation "ha[s] little or no effect on the occupational base of unskilled light work" for which plaintiff is qualified because plaintiff is "not substantially limited in his ability to meet any of the[] basic, work-related activities" enumerated in Social Security Ruling 85-15.  AT  43-44.  These basic demands of competitive, remunerative, unskilled work include:

> " . . . .  the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."

SSR 85-15.  In support of his conclusion, the ALJ specifically found that plaintiff "retains the capacity to understand, remember, and carry out one to two-step tasks and is able to maintain concentration, persistence, and pace throughout a normal workday as related to simple tasks."  AT

44.  The ALJ credited the opinions of Dr. Kalman and Dr. Daigle to support this finding.  Id. Indeed, Dr. Kalman's mild findings — to which the ALJ accorded "great weight" — included the assessment that plaintiff is "not significantly limited"[2] in his ability to understand and remember very short and simple repetitive instructions or tasks and can sustain concentration and persistence with respect to those tasks.  AT 41; 480-81.  Dr. Daigle also found that plaintiff was only slightly limited in his ability to understand, remember, and carry out simple job instructions.  AT 288.

Looking again to the opinions of Dr. Kalman and Dr. Daigle, the ALJ further found that plaintiff was able to "interact adequately with coworkers, supervisors, and the general public and adapt to changes in a routine work setting."  AT 44.  This accords with Dr. Daigle's assessment that plaintiff was only moderately limited in his ability to relate and interact with supervisors, coworkers and the public, and with Dr. Kalman's finding that plaintiff was not significantly limited in his ability to respond appropriately to expected or unexpected changes in a work setting.  AT 289, 482.

Accordingly, the definition of "moderately limited" employed by Dr. Kalman, though unconventional, was accounted for by the ALJ and the limitations it included were incorporated into the nonexertional component of plaintiff's RFC.  See AT 480, 44.

### 3.  Dr. Daigle's Opinion

Dr. Daigle completed a full psychiatric evaluation of plaintiff on May 20, 2008. AT 284.  The opinion included the prognosis that "Mr. McClung is not capable of employment at this time and is not likely to become capable of employment in the future under the circumstances described . . . ."  AT 288.  Plaintiff asserts that the ALJ failed to provided specific and legitimate reasons for discrediting this portion of the opinion.  Dkt. 13-1 at 19-20.  In disability benefits cases, the ALJ is not bound by the opinion of a physician on the ultimate issue of disability (the claimant's ability to perform work), but he cannot reject the findings and conclusions underlying

---

[2]Using Dr. Kalman's definition of this term, plaintiff can perform this function at a level equal to or greater than 90% of a normal, continuous, 8-hour workday.  AT 480.

1  that opinion without presenting specific and legitimate reasons supported by substantial evidence.

2  See Reddick, 157 F.3d at 725, Embrey,  849 F.2d at 422 (ALJ's approach in rejecting a

3  physician's conclusion that plaintiff is permanently unemployable by merely stating that the

4  objective factors point toward an adverse conclusion but not relating any of the factors to specific

5  medical opinions and findings, is inadequate).

6       The ALJ explained that little weight was given to Dr. Daigle's opinion that

7  plaintiff is not capable of employment because "it is inconsistent with his examination findings."

8  AT 41.  The ALJ noted that, in that examination, plaintiff was alert, matter of fact, somewhat flat

9  in his affect, had coherent and organized thought processes, euthymic mood, normal rate and tone

10 of speech, average intelligence, good subtraction of serial threes, was able to spell "world"

11 forwards and backward, was able to follow the conversation, and had adequate insight and

12 judgment.  AT 41, 288.  The ALJ found these "mild findings" to be consistent with Dr. Daigle's

13 opinion that plaintiff "can perform simple, repetitive tasks"[3] and also with Dr. Kalman's

14 examination which revealed that plaintiff was oriented to person, place and situation, could repeat

15 four digits forward and three digits backwards, could do serial threes and basic math, had average

16 intelligence and a logical and goal-oriented thought process.  AT 41.

17      The ALJ's explanation for rejecting Dr. Daigle's opinion on plaintiff's

18 employability properly set forth the conflicting aspects of Dr. Daigle's opinion, including his mild

19 examination findings and how they are consistent with the assessment that plaintiff is only slightly

20 limited in his ability to understand, remember, and carry out simple job instructions.  The ALJ

21 further compared the milder examination findings from Dr. Daigle to those of Dr. Kalman and

22 noted their consistency with each other.  This analysis provides the specific and legitimate reasons

23 necessary to reject Dr. Daigle's conclusion on plaintiff's employability.

24 _____

25      [3]The opinion, listed under the functional assessment portion of the evaluation, reads:
   "slightly limited in ability to understand, remember, and carry out simple 1 or 2 step job
26 instructions."  AT 288.

1    Nonetheless, while accepting Dr. Daigle's assessment that plaintiff can perform
2 simple and repetitive tasks, the ALJ did not discuss the five other functional assessment findings
3 in which plaintiff was found to be "moderately" or "moderately to markedly limited." AT 288-89.
4 Significantly, the ALJ failed to analyze Dr. Daigle's findings that plaintiff was moderate to
5 markedly limited in his ability "to associate with day-to-day work" — including attendance and
6 safety — and to adapt to the stresses common to a normal work environment. AT 289. The ALJ
7 may have believed these findings to be inconsistent with others in the record, or not supported by
8 Dr. Daigle's own examination, but he was required to explain as much, setting out a summary of
9 the inconsistent findings, the conflicting evidence and explaining why he accepted some over
10 others. See Reddick, 157 F.3d at 725.

11    The Commissioner does not address the ALJ's failure to discuss these findings but
12 points to other portions of the record that are purportedly inconsistent with Dr. Daigle's opinion as
13 a whole. Dkt. 16 at 13. Presumably, this is done to show that there was an evidentiary basis upon
14 which the ALJ could properly reject Dr. Daigle's findings. Specifically, the Commissioner points
15 to state agency non-examining medical consultant Dr. O'Malley who found that plaintiff's mental
16 impairments were not severe and that he would still "be capable of understanding and following
17 simple instructions limited contact w [sic] general public and co workers is approp[]." AT 310.
18 First, the court notes that this finding *is consistent* with Dr. Daigle's assessment that plaintiff was
19 only slightly limited in his ability to understand, remember and carry out simple instructions; it is
20 also consistent with the nonexertional component of plaintiff's RFC assessment that limited his
21 interaction with the public, coworkers or supervisors to less than 40% per workday. AT 288, 39.
22 As to the remainder of Dr. Daigle's assessments that may be at odds with Dr. O'Malley's opinion,
23 it is the ALJ's responsibility to set forth the inconsistencies presented by the two opinions and
24 provide specific and legitimate reasons for accepting or rejecting one opinion over the other. See
25 Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) (court reviews the adequacy
26 of the reasons specified by the ALJ, not the post hoc conclusions offered by the Commissioner).

1   The ALJ did not set forth any reasons for rejecting these portions of Dr. Daigle's opinion, so the

2   court will not speculate as to what proper reason the ALJ may have provided.

3          Nevertheless, Dr. Daigle's finding that plaintiff was moderate to markedly limited

4   in adapting to common work stress was accounted for by the ALJ in plaintiff's RFC assessment.

5   Relying on Dr. Kalman's opinion, the ALJ specifically found that plaintiff could "adequately . . . .

6   adapt to changes in a routine work setting."  AT 44.  Thus, any error here was harmless.

7          The same cannot be said for Dr. Daigle's finding that plaintiff was moderate to

8   markedly limited in his ability to "associate with" the daily work activities of attendance and

9   safety.  AT 289.  The ALJ did not render any findings suggesting that he considered and

10  incorporated this into the RFC assessment.  As discussed above, this error is not harmless because

11  plaintiff's ability to meet the demands of unskilled light work requires that he can perform on a

12  sustained basis.  See supra p 8, SSR 85-15.  If accepted as true, (see Lester, 81 F.3d at 834) Dr.

13  Daigle's finding with respect to plaintiff's attendance calls into question whether plaintiff would

14  be able to so perform.  SSR 85-15 also cautions that those suffering from mental impairments may

15  cease to function when faced with such demands as getting to work regularly and remaining there

16  for an entire day.  Because determining whether such individuals will be able to adapt to the

17  workplace is often "extremely difficult," the Ruling emphasizes the "importance of thoroughness

18  in evaluation on an individualized basis."  Id.  Accordingly, the court cannot say that the ALJ's

19  failure to account for this opinion was harmless error.

20          On remand, the ALJ will be required to consider Dr. Daigle's finding that plaintiff

21  is moderate to markedly limited in his ability "to associate with day-to-day work activity including

22  attendance and safety" and set forth specific and legitimate reasons for rejecting it.  Alternatively,

23  if the ALJ accepts this finding, he must thoroughly evaluate how this limitation affects the

24  occupational base of unskilled work as discussed in SSR 85-15.

25  \\\\\

26  \\\\\

13

1      B.    VOCATIONAL EXPERT TESTIMONY

2              Plaintiff claims the ALJ erred in employing the Medical-Vocational Guidelines

3   ("the grids") in light of the limitation that plaintiff should avoid concentrated interaction (more

4   than 60 percent of the workday) with the public, coworkers or supervisors.  See Dkt. 13-1 at 21.

5   The grids categorize jobs by their physical-exertional requirements (e.g., sedentary, light and

6   medium) and present various combinations of factors the ALJ must consider in determining the

7   availability of work that the claimant can perform.  See  20 C.F.R. pt. 404, subpt. P, App. 2; see

8   generally Desrosiers, 846 F.2d at 577-79.  The factors include the claimaint's residual functional

9   capacity, age, education, and work experience.  Id.  For each combination, the grids direct a

10  finding of either "disabled" or "not disabled."  Id.

11             Because the grids are merely an administrative tool to resolve individual claims

12  that fall into standardized patterns, there are limits on when the ALJ may rely on them:  "[T]he

13  ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the

14  grids accurately and completely describe the claimant's abilities and limitations."  See Jones v.

15  Heckler, 760 F.2d 993, 998 (9th Cir. 1985), Desrosiers, 846 F.2d at 578; see also Heckler v.

16  Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the

17  grids, however, even when a claimant has combined exertional and nonexertional limitations, if

18  the nonexertional limitations are not so significant as to impact the claimant's exertional

19  capabilities.[4] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

20  Bunnell, 947 F.2d at 345-47; Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle

---

21              [4]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
22  lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary;
    compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
23              Nonexertional activities include mental, sensory, postural, manipulative and
    environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §
24  416.969a(c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
    404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability
25  to work without directly affecting his or her strength, the claimant is said to have nonexertional
    (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d
26  953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1   v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (requiring significant nonexertional impairments in

2   order to depart from the grids).  In borderline cases, the ALJ must not apply the grids

3   mechanically.  Jones, 760 F.2d at 998.

4           Here, the ALJ found that plaintiff was able "to perform light, unskilled work as

5   defined in 20 CFR 416.967(b) but that he should avoid concentrated interaction (more than 60

6   percent of the day) with the public, coworkers, or supervisors."  AT 39.  As noted above, the ALJ

7   explained that this limitation has little or no effect on the occupational base of work for which

8   plaintiff is qualified, thereby justifying the absence of vocational expert testimony.  See Penny, 2

9   F.3d at 958-59 (only severe limitations on the claimant's functional capacities in ways not

10  contemplated by the grids requires vocational expert testimony).  But the ALJ improperly failed to

11  account for findings from Dr. Daigle and Dr. Kalman's reports which, if accepted as true, would

12  present significant nonexertional limitations to plaintiff's RFC assessment.  See supra pp 9, 11-13.

13  On this record, the court cannot determine whether the testimony of a vocational expert would be

14  required.  Rather, the ALJ needs to properly consider all of the findings discussed above from Dr.

15  Daigle and Dr. Kalman's reports and either reject them by setting forth specific and legitimate

16  reasons for doing so, or accept specific findings and incorporate them into plaintiff's RFC

17  assessment.  The ALJ must then decide if any nonexertional limitation to the RFC is severe

18  enough to warrant departure from the grids and the testimony of a vocational expert.

19  CONCLUSION

20          For the reasons stated herein, this matter will be remanded under sentence four of

21  42 U.S.C. § 405(g) for further development of the record and for further findings addressing the

22  deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

23          1.    Plaintiff's motion for summary judgment (dkt. 13) is granted;

24          2.    The Commissioner's cross-motion for summary judgment (dkt. 16)  is

25                denied;

26  \\\\\

1        3.     This matter is remanded for further proceedings pursuant to sentence four

2        of 42 U.S.C. § 405(g) in accordance with this order; and

3        4.     Judgment is entered for the plaintiff.

Dated: January 3, 2013

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

ckd9
McClung2874ss.dib